Chappell v. McMillan et al.

[No. 1245, August 31, 1910.]

## DELOS A. CHAPPELL, Appellant, v. DANIEL H. Mc-MILLAN, et al, Appellees.

### SYLLABUS (BY THE COURT.)

1. A promise to do or forbear from doing an act may be just as valuable consideration for a promise as the act or forbearance would be, and that the promise given for a promise is dependent on a condition does not affect its validity as consideration.

2. If promises are made in the alternative and one alternative promise becomes impossible of performance, that does not impair the obligation of the other promise.

3. The holding of the trial court that the contract between the Carthage Coal Company, one of the appellees, and Delos A. Chappell, the appellant, had become null and void from failure of consideration, that both parties were wholly released therefrom, and its action in decreeing the cancellation of said contract, were not warranted as a matter of law under the circumstances appearing in the case.

Appeal from the District Court for Socorro County before FRANK W. PARKER, Associate Justice. Remanded for further proceedings.

YEAMAN & GOVE and H. M. DOUGHERTY for Appellant.

Until delivery of the escrow holder or the happening of the event upon which delivery is conditioned, the instrument is ineffectual for any purpose. 16 Cyc. and cases cited; Stiles v. Brown, 16 Vt. 563; Stanley v. Valentine, 79 Ill. 544; Parrott v. Parrott, 1 Heisk 681; Henry v. Carlson, 90 Ind. 412; Skinner v. Baker, 79 Ill. 496; Morgan v. Carter, 48 Minn. 501.

The court will not set aside an instrument originally valid but which has since become ineffectual by reason of subsequent events, destroying its future operations upon the ground that it creates a cloud upon the title to real

Chappell v. McMillan et al.

estate. Hotchkiss v. Elling, 36 Barbour 36; Warvelle on Abstracts 550; Fonda v. Sage, 48 N. Y. 173; Lehman et al. v. Roberts, 86 N. Y. 232.

A counter claim is a demand existing in favor of the defendants against the plaintiff and which might have been prosecuted if plaintiff had never sued at all. Pomeroy Code Pl., sec. 614; Anderson, etc., v. Thompson, 88 Ind. 405; Graham v. Dunnegan, 6 Duer. 629; 6 Cyc. 292; Grand Chute v. Winega, 15 Wal. 373.

If the promise is in the alternative to do one of two things, and one becomes impossible, this does not excuse the doing of the other. 7 A. & E. Enc. 2 ed., 149; Jacquinet v. Boutron, 19 La. Ann. 30; Barkworth v. Young, 4 Drew 1; DeCosta v. Davis, 1 B. & P. 242; Mill Dam Foundry v. Hovey, 21 Pick., Mass. 417, 443; Pindor v. Upsters, 44 N. H. 358; 11 Century Digest, sec. 346; Rose v. San Antonio Ry., 31 Tex. 49; 9 Cyc. 327; Gray v. Bowen, 23 N. Y. Sup. 67; Patton v. Mills, 21 Kans. 163; Mueller v. Spring, 88 Mich. 390; Nolen v. Pine, 40 Iowa 166; Collins v. Gibbs, 2 Burrow 899; Locks v. Wright, 1 Strange 569; Clark v. Great Northern Ry. Co., 81 Fed. 282.

JAMES G. FITCH for Appellee.

Causes of action which are inconsistent with each other, cannot as a general rule be joined. 23 Cyc. 404, 405 B, 406 and cases cited; Bliss on Code Pleading, sec. 122; Phillips on Code Pleading, sec. 199; Polock v. Shafer, 46 Cal. 270; Golucke v. Lowndes Co., 123 Ga. 412, 51 S. E. 406; Vaule v. Steenerson, 63 Minn. 110, 66 N. W. 257; Boyd v. St. Louis Transit Co., 108 Mo. App. 303, 83 S. W. 287; Scherer v. Tyrrell, 40 Hun. 637; Budd v. Bingham, 18 Barb. 494; McLennan v. Prentice, 85 Wis. 427, 55 N. W. 764; Bowen v. Mandeville, 95 N. Y. 237; Gardner v. Ogden, 22 N. Y. 327; Taylor Co. v. Pumphrey, 32 S. W. 225, Tex. Civ. App.

After the time within which an amendment is permitted as a matter of course, plaintiff cannot either before or after the evidence has been taken, substitute a new cause of action under the cause of an amendment. Simpson v.

Miller, 94 Pac. 252, Cal. Civ. App.; Cassidy v. Saline Bank, 104 S. W. 829, Ind. Ter.; Foste v. Life Insurance Co., 26 Or. 449, 38 Pac. 617; Gleason v. Gleason, 54 Cal. 135; Buchanan v. Comstock, 57 Barb. 582; Prouty v. Lake Shore R. R., 85 N. Y. 272; Jacob v. Lorenz, 98 Cal. 332, 33 Pac. 119; Riley v. St. Louis R. Co., 124 Mo. App. 278, 101 S. W. 156; Woodward v. N. P. Ry., 16 N. D. 38, 111 N. W. 627; Red Diamond Cloth. Co. v. Steidemann, 120 Mo. App. 519, 97 S. W. 220; Herman v. Glann, 129 Mo. 325, 31 S. W. 589; Purdy v. Pfaff, 104 Mo. App. 331, 78 S. W. 824; Ross v. Cleveland Land Co., 162 Mo. 317, 62 S. W. 984; Swedish-Am. Nat. Bank v. Dickinson, 6 N. D. 222, 69 N. W. 455; Allen v. City of Davenport, 115 Iowa 20, 87 N. W. 743; Meyer v. Berlandi, 39 Minn. 438, 40 N. W. 513; Bliss on Code Pleading, sec. 396; Phillips on Code Pleading, sec. 273.

Plaintiff did not stand on his demurrer to the counter claim, but after it was overruled filed a reply. He thereby abandoned it. Beall v. Territory, 1 N. M. 507; Overland Dispatch Co. v. Wedeles, 1 N. M. 528; Bremen Min. Co. v. Bremen, 13 N. M. 111; 7·Cyc. 256; Phillips on Code Pleading, secs. 306, 307; Bliss on Code Pleading, sec. 417.

In·suits for rescission or cancellation all persons whose rights, interests, or relations with or through the subject matter of the suit would be affected by the cancellation or rescission should be brought before the court, so that they can be heard in their own behalf. 6 Cyc. 319; 16 Cyc. 106; Bowman v. Germy, 23 Kan. 306; Valentine v. Fish, 45 Ill. 462; Troxel v. Thomas, 155 Ind. 519, 58 N. E. 725; Pomeroy Code Remedies, secs. 90, 97; Bliss on Code Pleading, secs. 348, 351a, 411; DePuy v. Strong, 37 N. Y. 372; Grain v. Aldrich, 38 Cal. 514.

The facts warranted the finding of the court, that the lease was void, and the decree of cancellation. 9 Cyc. 320, 326, 369, 615; Philpot v. Gruninger, 14 Wall. 520, 20 L. 743; Dermott v. Jones, 23 How. 220, 16 L. 442; Cadwell v. Blake, 6 Gray, Mass., 403; Beacher v. Conradt, 13 N. Y. 108; Smith v. Wilson, 8 East 437; Boone v. Eyre, 1 Henry Blackstone 273; 9 Cyc. 615; Locke v. Wright, 1 Strange 569; Collins v. Gibbs, 2 Burrows 899; Clark v. Great

Northern Ry., 81 Fed. 282; Harvester King Co. v. Mitchell, 89 Fed. 173; 1 Parsons on Contracts, 3 ed., 386; Allen v. Hammond, 11 Pet. 63, 9 L. 633; Stewart v. Louring, 87 Mass. 306; Hoffman v. Duryea, 77 N. Y. Sup. 1086; Savage v. Whitaker, 15 Me. 14; Dickinson v. Hall, 31 Mass. 217; 6 A. & E. Enc. 787, Note 2.

## STATEMENT OF THE CASE.

On February 2, 1904, the Carthage Coal Company gave to Daniel H. McMillan an option to purchase certain land and personal property at any time prior to May 15, 1904. This option was thereafter extended, in accordance with its terms, to August 15, 1904. The purchase price, seventy-five thousand dollars, was to be paid in installments. Upon the payment of the first installment, title was to pass to McMillan, but possession was to be retained by the coal company until the payment of the second installment at or before the specified time, when McMillan was to be given possession. On July 1, 1904, the Carthage Coal Company entered into an agreement with the plaintiff, the appellant, Chappell, which was expressly made subordinate to the rights of McMillan under his option. The instrument evidencing this agreement provides that Chappell should have the right to purchase the property if McMillan should not, and a deed was placed in escrow for delivery to Chappell in the event of the exercise of his option; that Chappell should have a lease on the premises from August 16, 1904, until all coal should be extracted therefrom, or McMillan should be entitled to the premises under his option, Chappell obligating himself to work the property and pay a specified royalty for all coal extracted; and that in the event McMillan should take up his option and pay the full purchase price for the premises, thus depriving Chappell of all right to obtain the property as lessee or purchaser, the coal company should pay to him, from the funds realized from the last installment of the McMillan option, the sum of ten thousand dollars. On July 23, 1904, and within the time limited for his second payment, McMillan elected to exercise his option to purchase, and on that date made both the first and the

Chappell v. McMillan, et al.

second payments required to the coal company and received a deed conveying title to the property, and through his grantees took immediate possession. On the 25th day of July, 1904, the plaintiff filed a bill, which was afterwards amended, in which he attacked the validity of the McMillan option and all conveyances thereunder, for want of consideration and for fraud, and asked for their cancellation, and an injunction to prevent the defendants from mining coal under them, and to restrain them from preventing the plaintiff from mining coal, under his said agreement, and thereafter the defendants, the Carthage Coal Co., August H. Hilton and Henry R. Buel filed an answer and counter claim to the amended complaint, and in the counter claim asked for the cancellation of the deed in escrow under Chappell's option, and the entire contract of July 1, 1904, in effect alleging the same to be a cloud on their title and claiming failure, or want of consideration for the contract of July 1, 1904. To this counter claim the plaintiff filed a general demurrer, which was overruled by the court. Thereafter, on the 25th day of September, 1904, plaintiff filed an answer to the counter claim, specifically pleading the lease and option of July 1, 1904, and, in substance, claiming to be entitled to the payment therein provided for in case McMillan should purchase under his option, of ten thousand dollars. To this answer three of the defendants, on November 13, 1907, filed a demurrer and the court sustained the demurrer on December 30, 1907. On the 2nd day of June, 1908, the court entered an order in said cause affirming the validity of the McMillan option and the conveyances made under it, and decreeing the cancellation of the agreement with the plaintiff of July 1, 1904, and the escrow deed connected therewith.

### OPINION OF THE COURT.

ABBOTT, J.—The appellant does not here call in question that part of the order of the District Court of June 2, 1908, which decrees the validity of the McMillan option and the related conveyances. The essential injury of which he complains to this court, through his assignments of error, is that by the order referred to, his agree-

ment with the Carthage Coal Company, of July 1, 1904, was declared void and its cancellation decreed. Of the appellees only the Carthage Coal Company, August H. Hilton, and Henry R. Buel are parties to the pleadings on which that portion of the order is founded. In their briefs, both parties claim that the question of the validity of the Chappell agreement with the Carthage Coal Company was not before the trial court on the pleadings. That position, we think, is untenable for the appellant since he chose not to stand on his demurrer to the counter claim of the appellees above named, whereby they alleged the invalidity of the agreement in question, and prayed for its cancellation, but instead replied to the counter claim, alleging the validity of his agreement and his right to the payment of ten thousand dollars from the Carthage Coal Company, in accordance with its terms. Overland Dis. Co. v. Wedeles and cases cited, 1 N. M., 528, 531; Bremen Mining Co. v. Bremen, 13 N. M. 111. On the other hand, the three appellees named aver that the appellant, having in his original complaint alleged the invalidity of the McMillan option, is precluded from afterwards, in the same cause, making any claim based on its validity. Whether the appellant is chargeable with fatal inconsistency in his pleadings we need not determine, since the appellees did not make that one of the grounds of their demurrer to his reply to their counter claim, but alleged and relied on the invalidity of the Chappell agreement, for failure of consideration moving from the appellant to the Carthage Coal Company.

The trial court sustained the demurrer, and must therefore have passed on the validity of the Chappell agreement, arriving apparently at the conclusion embodied in Finding of Law 3, which is as follows: "The contract and lease between the Carthage Coal Company was made subject to the rights of the said McMillan under his said option with the Carthage Coal Company and by the election to purchase and the making of the first and second payments of the purchase price, the conveyance of the Carthage Coal Company to the said McMillan and by him to the said Stackhouse and the taking of possession by the

latter, before any payment had been made or any act had been done, or was required to be made or done under or by virtue of the terms of the contract and lease between the Carthage Coal Company and the plaintiff, discharged and released both said plaintiff and said company from all their promises and undertakings therein contained, and the said contract and lease became null and void and there resulted an entire failure of consideration therefor."

Fortunately, the attorneys in the cause did not, on either side, stand on the position that the validity of the Chappell agreement was not involved, but, instead, have aided the court with able and exhaustive arguments on the question, in their briefs. Adopting the facts as stated in the finding of the trial court quoted, it is obvious that we must first determine what was the consideration on Chappell's part for what the Carthage Coal Company in its contract with him of July 1, 1904, agreed to do. Was it that he actually should mine certain quantities of coal and pay to the Carthage Coal Company certain royalties thereon, etc., or that he should promise and agree to do those things in certain contingencies, binding himself to the defendant coal company, to that effect by a valid agreement? On this the whole matter turns. It is familiar law (Cyc. 9, 323) that a promise to do or forbear from doing an act may be "just as valuable consideration for a promise as the act or forbearance would be," and "that the promise given for a promise, is dependent on a condition does not affect its validity as consideration." Cyc. 9, 327.

It was plainly in the minds of the parties, as the contract shows, that Chappell might never make a payment, never mine any coal, never pay any royalties; yet he might have had to do all those things under his contract in the event that McMillan did not buy under his option. The unavoidable inference from the terms of the Chappell agreement and the other facts of record is that, for some reason, the coal company thought or feared that McMillan would not buy under his option, or that the outcome would somehow be unsatisfactory to it. It clearly preferred disposing of the property in question, at a less price and on

more favorable terms to the purchaser than it had made
to McMillan, to holding and operating it. It gave Chap-
pell an option to buy it for $65,000, whereas the price to
McMillan was $75,000. The difference of $10,000 be-
tween the two prices is significant as being the very amount
which it agreed to pay Chappell in case McMillan should
take the property under his option. In effect, it agreed
to give the benefit of the McMillan option to Chappell, as
to the first payment to be made under it, which, if made,
was to relieve Chappell to that extent, and in the differ-
ence of $10,000, between the two prices, in consideration
of his agreeing to take the mine off its hands, operate it
and pay a royalty in the event of the expected failure of
McMillan to buy under his option. Up to the time when
McMillan met the terms of his agreement, it was protected
against such a failure by the Chappell agreement for a
consideration which was clearly expressed, and on terms
which must have been in the minds of the parties since
they were explicitly embodied in the contract.

The appellees contend that the "object" or "motive"
of the coal company in making the Chappell agreement is
to be distinguished from the "consideration" on Chappell's
part, which is true, but the obvious motive or object throws
light on what was the real consideration. The appellees
claim also that the appellant attempts to read into the
Chappell agreement conditions which it does not contain
when he asserts "that his promise to mine coal and pay a
royalty was in the alternative, or that it was dependent
upon the validity and exercise of McMillan's option."
Yet such, we think, is the plain import of the language of
the agreement. After the provisions in it which are appro-
priate to and constitute a lease of the property, it provides
thus: "It is further provided that this lease and option
is subject to the rights, if any he has, of Daniel H. Mc-
Millan growing out of an option given by the said party
of the first part to the said McMillan on the 2nd day of
February, A. D., 1904, and the said party of the second
part agrees to protect and save harmless the said party of
the first part from any litigation which might be brought
by the said McMillan against the said party of the first

part by reason of his having executed this contract." And: "It is further agreed that if it should be determined that the said Daniel H. McMillan has the right to carry out the said option that all payments, except the first, which has hereinbefore been provided for, shall be paid to said party of the first part herein, except ten thousand dollars of the last payment specified in the said option, which shall be made to the party of the second part herein, and in case of the refusal or neglect of the said Daniel H. McMillan to pay the same to the party of the second part, that the party of the first part shall make such payment to party of the second part." The "rights" referred to, included the right as "determined" by the district court to do the very thing which McMillan did, namely, to make the two first payments provided for by his option and take possession of the property in question before August 16th, 1904, at which date the appellant would have been entitled to take possession but for that action of McMillan. Even if McMillan had made the first payment under his option, but not the second, before August 16, 1904, the appellant, Chappell, would have been bound to take possession of the mine and operate it, since the agreement provided that in such case "the lease and contract shall be in full force and effect." That is, if it should be determined that McMillan had the right to do a certain thing and he did it before a certain time, the appellant was not bound to take possession, mine coal, etc., otherwise he was so bound. Suppose McMillan had made the first payment required of him but not the second before August 16, 1904, that the appellant had taken possession, mined coal, etc., as his contract required, and that McMillan had in a few weeks or days thereafter, by making the second payment provided for in his option, become entitled to possession and ousted the appellant. As we understand the position of the appellees they would concede that in such a case the appellant would have been entitled to the ten thousand dollars he claims. We certainly see no reason to the contrary. But he was bound by his contract to do that, if McMillan should take that course, and necessarily to hold himself in readiness to do it, until it should become known whether McMillan

would or would not take that course. That was an onerous obligation, one which would prevent a man unless he was possessed of much more than ordinary means, from engaging in other business enterprises while it continued in force. Unless he gets the ten thousand dollars he claims under his contract he has no compensation for the burden he thus assumed, by which he became practically the insurer of the coal company against the failure of McMillan to buy under his option. Suppose one should obtain a policy of insurance against accident for a term of a year and agree to pay the premium at the end of the year. The year expires and he has met with no accident. When asked to pay for the policy of insurance, he says: "The policy was for my benefit in case of accident to me, and it is now impossible that any accident should occur to me in that year. The consideration for my agreement to pay has failed; become impossible of performance on the part of the maker of the policy, since it was to pay me nothing unless in case of accident in that year." The reply would be, that the company which issued the policy had done all it agreed to do, obligated itself to pay the policy holder a certain amount in case he should meet with an accident, and that it incurred the risk of having to make such a payment.

When the appellant assumed the obligations expressed in his agreement with the Carthage Coal Company he furnished a valuable consideration for the concurrent promises of the coal company to him. That those promises were in the alternative, and one alternative became impossible of performance does not impair the obligation of the alternative promise. Vol. 7, Am. & Eng. Enc. (2nd. ed.) p. 149; Mill Dam Foundry v. Hovey, 21 Pick., Mass., 417-443; See also Pinder v. Upster, 44 N. H. 358.

Other points are discussed by counsel in their respective briefs, but we do not find that they were before the trial court; at least, in a way to affect its action.

We are, therefore, of the opinion that the demurrer of the three appellees named to the appellant's reply to their

counter claim should have been overruled. It may be, of course, that these appellees have a good defense against the claim which the appellant makes for the payment of $10,000 to him, under the agreement in question, and they should not be deprived of the opportunity to make such a defense, if they have one.

The case is remanded to the District Court for further proceedings in accordance with this opinion, between the appellant and the three appellees, the Carthage Coal Company, August H. Hilton and Henry R. Buel.

William H. Pope, C. J., John R. McFie, A. J., and Edward R. Wright, A. J., concur.

M. C. Mechem, A. J., dissents.

F. W. Parker, A. J., heard case below.